# UNITED STATES BANKRUPTCY COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re COLLEGE PROPERTIES LIMITED PARTNERSHIP, a limited partnership,<br><br>In re COLLEGE PROPERTIES II, an Arizona limited partnership,<br><br>Debtors. | Chapter 11 Proceedings<br>Case No. 02-05-10095-PHX-CGC and<br>Case No. 02-05-15155-RJH<br><br>Jointly Administered<br><br>UNDER ADVISEMENT DECISION RE: FIRST AND FINAL FEE APPLICATION OF ALTFELD BATTAILE & GOLDMAN, P.C. |

Altfeld Battaile & Goldman, P.C. ("ABG") seeks Court approval of its First and Final Fee Application totaling $225,000 in attorneys fees. The fees are divided into two portions: 1) $125,000 for prepetition and postpetition work as counsel in the "General Partner Litigation" and 2) $100,000 for postpetition work as special counsel for Trustee Brian Mullen in this bankruptcy. The dispute here centers solely on whether ABG is entitled to its fees for the work it did prior to its appointment as special counsel. No party objects to the $100,000 in fees for ABG's postpetition work as special counsel for the Trustee and those fees have already been allowed and approved for payment by the Court.

The prepetition fees arose as follows. In August, 2004, ABG was engaged by Anthony De Petris, Landis Mitchell, and Patricia Palmer to represent them in a suit to enforce their rights as limited partners in College Properties limited partnership against College Properties, Black Mountain Estates, Montage, Inc., Tom D'Ambrosio and others. In that lawsuit, the plaintiffs alleged that Mr. D'Ambrosio, College Properties' general partner, transferred valuable real estate owned by College Properties to other entities owned by Mr. D'Ambrosio and without notice to College Properties' limited partners. In return, College Properties received a $2,025,000 secured note and deed of trust that was subsequently replaced with worthless shares in Montage, Inc. The real property was then scheduled for auction which, if concluded, would have resulted, according to ABG, in Mr. D'Ambrosio's entities receiving all of the sale proceeds without payment to the limited partner investors. The litigation plan was for plaintiffs, in a

representative capacity, to assert class and derivative claims arising out of what ABG refers to as the "Montage Merger." This representation occurred both pre- and post-petition from July 10, 2004, to November 18, 2005, at which time ABG was employed as special counsel to the Trustee.

Under the original fee agreement with the three limited partner plaintiffs, ABG agreed to represent them under a contingency fee arrangement for one third of any "gross recovery" ABG obtained on plaintiffs' behalf, meaning all sums recovered through litigation from whatever source, "whether by payment, settlement, judgment or any other means" from D'Ambrosio or Montage.

Eventually, the property was sold through the bankruptcy for $5,825,000. Subsequently, a global settlement was reached in the General Partner Litigation pursuant to which the Trustee agreed to hold $425,000 of the proceeds in reserve for Trustee and Professional Fees. Of this amount, ABG has already been awarded $100,000 for fees as Special Counsel for the Trustee. The Trustee and Trustee's counsel plan to seek approval of $100,000 each from the reserve, leaving the Court to determine whether ABG is entitled to an additional $125,000 in fees for representing the individual plaintiffs prior to its appointment as special counsel. Any amounts not awarded for fees from the reserve will be paid pro rata to the limited partners, not including D'Ambrosio.

ABG tacitly acknowledges that its entitlement to fees is not transparently clear. While it is not uncommon for a lawyer who represented a debtor on a contingency basis to be employed as special counsel and thereafter receive payment from the estate when the case is settled or litigated post-petition, that model is not helpful here to ABG because it never represented Debtor. Rather, ABG seeks fees from a bankruptcy estate for work done for third parties (three limited partners) without ever having been hired by Debtor or certified as representative counsel for investors in the Debtor.

ABG's claim for fees is based primarily upon the so-called "common fund" doctrine. It argues that in class and derivative actions in Arizona, the common fund doctrine applies to award fees to lawyers who create, enhance or preserve a common fund for a group of

beneficiaries. *In re Estate of Brown,* 137 Ariz. 309, 670 P.2d 414 (App. 1983). The doctrine applies where "1. the suit confers a substantial benefit; 2. the benefit goes to members of an ascertainable class; and 3. 'the court's award would spread the costs proportionately among the beneficiaries.'" *Friedman v. Microsoft Corp.,* 213 Ariz. 344, 351, 141 P.3d 824, 831 (App. 2006). Here, ABG argues that is representation of the three plaintiffs in the Pinal County lawsuit substantially contribution to the common fund represented by a substantial portion of the proceeds of the sale of the property.

Several objections were received, among them Thomas D'Ambrosio, former general partner of Debtors and defendant in the underlying proceedings and Anthony DePetris, a limited partner and one of the original three plaintiffs. Mr. D'Ambrosio contends that ABG is not entitled to any fees because its participation was 1) against the wishes of the majority of the limited partners, 2) the common fund created was due to the efforts of Mr. D'Ambrosio and not ABG (and, in fact, ABG's participation actually hindered and diminished the ultimate return), and 3) the requested fees are not supported by the fee agreement. In addition, Mr. DePetris objects on the grounds that the fees are exorbitant and unearned, especially in light of the fact that the settlement was contrary to the original engagement letter in that it was not a return of the plaintiffs' original investment plus fair market appreciation. Mr. DePetris also contends that ABG abandoned its initial clients when it elected to represent the Trustee on behalf of the estate. Last, Montage Industries, Inc. and Casa Del Oro Development, L.L.C., object to the "characterization of the services rendered by the Firm, as well as the characterization of the facts," although noting no objection to the amount or payment to ABG of any fees.

From the Court's review of the history of this case and the underlying adversary, it finds that the common fund doctrine applies. The common fund doctrine is an equitable doctrine meant to prevent unjust enrichment to a group or class benefitted by an attorneys' work. *Valder Law Offices v. Keenan Law Firm,* 212 Ariz. 244, 249, 129 P.3d 966, 971 (App. 2006). It is an exception to the general rule that attorneys' fees may be awarded only when expressly authorized by contract or statute. *Id. citing Kerr v. Killian,* 197 Ariz. 213, 217-18, 3 P.3d 1133,

3

1137-38 (App. 2000). The common fund doctrine does not require that a class actually be certified. *Id.* ("[w]hether the doctrine applies a particular case is not determined by a label, but rather by a proper understanding of the doctrine and its limitations."). Fees are allowable under the common fund doctrine even where other counsel is employed and some of the class is represented by other counsel, as long as no award is duplicative. *Estate of Brown v. Burch & Cracchiolo, P.A.,* 137 Ariz. 309, 670 P.2d 414 (App. 1983).

The Court rejects Mr. D'Ambrosio's argument that ABG hindered rather than helped the ultimate resolution of the case. Regardless of whether a majority of the limited partners objected to the three plaintiffs' actions in the underlying matter, the fact remains that three of the limited partners pursued this matter originally and, ultimately, it resulted in recovery to all the limited partners, thereby creating a common fund. Further, Mr. D'Ambrosio attempts to take credit for the outcome of this case, but that ignores the fundamental, case-altering fact that without ABG's prepetition work successfully enjoining the prepetition sale of the property at issue, this property may have been lost to the limited partners for good, especially in light of the legal rights of a bona fide third party purchaser. As it turned out, ABG's work managed to preserve the property, recover it from Montage and bring it back to the partnership such that it became part of the estate and available to the limited partners. ABG was also instrumental in preparing this case from its early infancy to the point at which it was pursued by the Trustee in this bankruptcy. Without that early work, the Trustee may not have pursued this action at all and, if he had, would have been forced to do this work at that point. With a portion of this work already done, the case was that much further along.

Mr. D'Ambrosio's attempt to limit the fees to the pro rata share of the three named limited partners is not supported by any law and is intrinsically contrary to the purpose of the common fund doctrine. The doctrine is intended to prevent those sharing in the common fund from being unjustly enriched by counsel's work: As an equitable matter, the fees are to be spread among *all* receiving a portion of the common fund. Because all the limited partners are sharing in the common fund created through no effort of their own, equity supports that they all should

4

share in the costs of creating that fund in the first instance. There is no justification for excluding any portion of the group and Mr. D'Ambrosio cites no authority for that proposition.

The Court also rejects Mr. DePetris' argument that counsel's fees are exorbitant or unearned. The Court understands that Mr. DePetris disagrees with the result of this case as was clearly indicated by his objection to the settlement. However, the Court did approve the settlement and found it to be in the best interests of the parties and the estate. Further, it was the Court who forced counsel into making the difficult choice whether to continue its representation of the individual plaintiffs or be appointed as special counsel to the Trustee. That choice was ABG's and it does not diminish the work that it did prepetition or pre-appointment as special counsel.

Last, the argument was raised at the hearing by counsel for Mr. DePetris that ABG should be limited to recovering only what it agreed to under the original fee agreement with the three individual plaintiffs. In particular, the fee agreement provided that ABG would be entitled to a 1/3 contingency fee on any amounts recovered from specific defendants. This argument overlooks the fact that fees are not be sought under the fee agreement. Counsel is not asking for a 1/3 contingency fee against these three individuals under this contract. The Court is inclined to agree with Mr. DePetris' counsel that this fee agreement was no longer in effect once counsel chose to pursue this matter as special counsel for the Trustee, and that is one clear reason why ABG should not be limited to the terms of the agreement. The fee agreement was abandoned. The second reason why ABG should not be limited is that the common fund doctrine specifically applies where a fee agreement does not. The common fund doctrine applies where there is no contractual or statutory ground for the award of fees. That is the doctrine's purpose, to share the counsel's fees among those enjoying the fruits of the attorneys' labor and who have otherwise have no obligation to pay the attorneys' fees.

The same holds true for Mr. D'Ambrosio's argument that ABG should be limited to what it bargained for under the fee agreement signed with the Trustee. This ignores the fact that fees earned as special counsel for the Trustee were separately awarded in the absence of objection

5

and without prejudice to seeking fees under the common fund doctrine. The fees for work done prior to being appointed special counsel are not controlled by the later signed fee agreement. The common fund doctrine controls how those fees will be calculated.

Further, under the common fund doctrine, fees are allowed as either a percentage of recovery or under the more traditional lodestar approach. *See Ladewig v. Arizona Dept. of Revenue,* 204. Ariz. 352, 63 P.3d 1089 (Ariz. Tax Ct. 2003). Regardless of the method chosen, the fees are still subject to a reasonableness standard. To illustrate the reasonableness of its fees, ABG applies the lodestar approach. In analyzing this approach, the Court has reviewed the detailed billing statements submitted by ABG and finds that it seeks considerably less than what it would be entitled to on an hourly billing basis.

According to ABG, it agreed to limit its request to $125,000 for fees unrelated to its work as special counsel to the Trustee in order to facilitate settlement. The $125,000 represents work performed from July, 2004, to the date it was appointed special counsel for the Trustee, which was November 18, 2005. This work accounts for nearly 700 hours of work by ABG on behalf of the limited partners, according to ABG's billing statements. As ABG illustrated in its fee application, under a traditional hourly billing approach, this would have amounted to over $190,000 in fees, plus costs. Reducing its fees to $125,000 results in approximately a 35% reduction in its hourly billing rates.

Viewed as a percentage of the common fund created, the amount requested is likewise reasonable. Given the nature of the recovery in this case, it is more difficult than usual to ascertain the contours of the common fund. However, one thing may be clearly said – the preservation of the asset for the estate was a significant benefit conferred and without which the limited partners may have been left with nothing.

In light of the work performed and the results achieved, the Court finds this amount reasonable and awards the amount of $125,000. ABG is to submit a form of order.

So ordered.

**DATED: May 29, 2007**

*/s/ Charles G. Case II*
CHARLES G. CASE II
UNITED STATES BANKRUPTCY JUDGE

**COPY** of the foregoing mailed by the BNC and/or
sent by auto-generated mail to:

Clifford B. Altfels
Altfeld Battaile & Goldman
250 N. Meyer Avenue
Tucson, Arizona 85701-1090
Special Counsel to Trustee

Brian J. Mullen
P.O. Box 32247
Phoenix, Arizona 85064
Chapter 11 Trustee

James E. Cross
Brenda K. Martin
Osborn, Maledon, PA
2929 N. Central Avenue, 21st Floor
Phoenix, Arizona 85012-2974
Attorneys for Brian J. Mullen, Trustee

Charles T. Stegall
Loren I. Thorson
Stegall, Katz & Whitaker, PC
531 E. Thomas Road, suite 102
Phoenix, Arizona 85012-3239
Attorneys for Tom D'Ambrosio

John T. Ryan
3440 N. 16th Street, Suite 5
Phoenix, Arizona 85016
Attorney for Debtor

Charles J. Kelhoffer

7

Case 2:05-bk-10095-DPC    Doc 239    Filed 05/29/07    Entered 05/29/07 15:24:34    Desc
Main Document    Page 7 of 9

Tamlyn E. Lewis
Geoffrey M. Khotim
Ridenour, Heinton, Kelhoffer, Lewis & Garth, PLLC
201 N. Central Avenue, Suite 3300
Phoenix, Arizona 85004
Attorneys for Montage Industries, Inc.,
Black Mountain Homes, LLC and
Casa del Oro Development, LLC

Randy Nussbaum
Kevin J. Rattay
Jaburg & Wilk, PC
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012-2440
Attorneys for Montage Industries, Inc.,
Black Mountain Homes, LLC and
Casa del Oro Development, LLC

Thoomas McCarville
David McCarville
McCarville Law Office
501 N. Florence Street, Suite 101
Casa Grande, Arizona 85222
Attorneys for Landis Mitchell

Joseph T. Stewart
Law Office of Joseph T. Stewart
1100 E. Washington Street, Suite 200
Phoenix, Arizona 85034-1090
Attorneys for Anthony DePetris and Patricia Palmer

Stephen R. Cooper
Cooper Vasquez & Reuter, PC
221 N. Florence Street
Casa Grande, Arizona 85230
Attorneys for Landis Mitchell

Howard C. Meyers
Burch & Cracchiolo, PA
702 E. Osborn Road, suite 200
Phoenix, Arizona 85014
Attorneys for Loren Jessen, as Trustee of the
Henry Jessen Trust dated March 9, 1993 and the
Evelyn L. Jessen Trust dated December 12, 1993

Richard Cuellar
Office of the U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, Arizona 85003

8

Case 2:05-bk-10095-DPC    Doc 239    Filed 05/29/07    Entered 05/29/07 15:24:34    Desc
Main Document    Page 8 of 9

9