**UNITED STATES BANKRUPTCY COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re COLLEGE PROPERTIES LIMITED PARTNERSHIP, a limited partnership, | Chapter 11 Proceedings<br>Case No. 02-05-10095-PHX-CGC and<br>Case No. 02-05-15155-RJH |
| In re COLLEGE PROPERTIES II, an Arizona limited partnership,<br><br>Debtors. | Jointly Administered<br><br>UNDER ADVISEMENT DECISION RE: THIRD APPLICATION FOR FOR APPROVAL AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES TO OSBORN MALEDON, P.A. |

**I.    Introduction and Background**

Osborn Maledon, P.A. ("Osborn"), has filed a third fee application as counsel for the Trustee, Brian Mullen, seeking approval of $105,226.00 in fees and $6,849.63 in costs. Objections have been filed by limited partners dePetris, Palmer, Carlson and Scappatura ("Objectors").

In February, 2007, after an evidentiary hearing at which the Objectors argued against approval of the SACR, the Court approved a global settlement concerning litigation among the estate, the general partner Thomas D'Ambrosio, Black Mountain Homes and others. This was documented in a "Settlement Agreement and Comprehensive Release" ("SACR") dated as of January 8, 2007. The Objectors were not parties to the SACR but their limited partner interests were treated in it. In essence, the proceeds of sale of the properties that had been owned by the debtor partnerships were distributed to parties in interest (including payment of certain liens, establishment of a reserve for administrative expenses, a distribution to the general partner and distributions to holders of limited partnership interests) and partners electing to receive payments gave and were granted comprehensive releases. Limited partners who opted out of receiving a distribution (such as the Objectors) neither gave nor received releases and were free to continue to litigate claims to the extent they existed.

The Trustee and Professional fee reserve under the SACR was set at $425,000 (the "Fee

Reserve"). Of this amount, the Trustee has agreed to limit his fees to $100,000 notwithstanding any additional amount that may be presumptively due under 11 U.S.C. § 326. Special counsel to the Trustee, Altfeld Battaile & Goldman, P.C., has previously applied for and been awarded $225,000, leaving $100,000 in the reserve for Osborn[1], subject to notice and Court approval. Under the SACR, any unpaid amount from the fee reserve would be used to make additional distributions to the settling limited partners.

However, some or all of the Objectors filed an appeal from the order approving the SACR. The Bankruptcy Appellate Panel dismissed the appeal as moot because no stay had been entered and distributions had been made. That disposition has now been appealed to the Ninth Circuit where it is pending.

Osborn has incurred approximately $70,000 in fees in representing the estate in the appeal and related controversies beyond what was necessary to bring the SACR to closure. If the appeal continues, there will be more expense incurred. If the Objectors file additional litigation involving the estate, more expense yet will be incurred.

Against this background, Osborn asks to be compensated in excess of the remaining Fee Reserve, relying on Paragraph 5 of the SACR. That paragraph provides that the Trustee shall retain funds otherwise payable to non-settling limited partners "to fund the Debtors' participation in any litigation that such parties shall choose to pursue." The SACR further noted that "Non-Settling Parties need to recognize that if the GP or any other party is successful in defending the claims, such parties shall have a claim to recover attorneys' fees and costs from

---

[1] Osborn was awarded and paid $75,325.50 in fees and $2,323.46 in costs pursuant to its first fee application (Docket 147). Osborn was awarded $67,621.50 in fees and $2,697.66 in costs for the period August 1, 2006, through January 31, 2007 (docket 217). Although the application is not clear, the Court concludes that these fees have not been paid and were contemplated to be within the $100,000 Fee Cap of the SACR. The Operating report for May (docket 260) is also unclear for two reasons: 1) it indicates that $34,259.00 in fees to Osborn were approved by the April 17 order (docket 217) but the amount stated in the order is over $70,000; and 2) it shows no payment on the approved April 17 amount but a total, in two payments, in excess of $72,000. As best as the Court can tell, the total amount paid roughly reflects the amount approved in the first application and no amount has been paid on the approved second application. As the case was converted to Chapter 7 on June 4, 2007, there are no Chapter 11 operating statements after May, 2007.

the Non-Settling Party Funds." Objectors argue 1) that the fees are excessive and should not be approved, 2) that, in any event, the fees should be limited to the remainder of the Fee Reserve, 3) that any award is premature until all appeals are exhausted because it is not presently possible to determine whether Osborn has been "successful" in defending the appeal, and 4) the BAP rather than the Bankruptcy Court has jurisdiction over the award of fees on appeal.

**II.     Analysis**

      **A.     Are the fees excessive and duplicative?**

Without detail, the Objectors argue that the fees are excessive, duplicative and suffer from lumping. The Court has reviewed the detailed time records and finds the objection to be without merit. Further, the Court finds that the fees incurred are reasonable for the work performed. Therefore, all fees will be approved; the issue remaining is how, if at all, will they be paid?

      **B.     Should payment be limited to the Fee Reserve?**

The application reflects that, of the $105,226.00 requested, over $70,000 was incurred in connection with the appeal and the remaining $35,000 in connection with asset disposition, case administration, fee applications and general litigation. This means that the total non-appeal related fees to be charged against the Fee Reserve for Osborn would approximate the $100,000 set aside for that purpose.[2]

This squarely presents the question whether the remaining fees, consisting almost entirely of those incurred in defending the appeal, should be payable from the amounts set aside for distributions to the Objectors as Non-Settling Limited Partners.

The answer is a qualified yes. Paragraph 5, though not as artfully drafted as it might have been, is nonetheless very clear that the amounts set aside for Non-Settling Partners may be used for fees and costs incurred in connection with litigation pursued by such parties. That is what has occurred here. DePetris and Palmer have pursued litigation, in the form of an appeal of

---

[2] The total consists of the approved but unpaid fees of approximately $70,000 from the Second Application and the non appeal related fees in this application of approximately $35,000.

3

the order approving the SACR, that has required a defense from the estate. They were clearly on notice that the risk of doing so would be the invasion of the funds otherwise set aside for them. But, they affirmatively decided NOT to accept the funds, presumably because they did not want any claims they held to be released. That was their choice under the SACR and while they were free to make it, it wasn't free. The cost is the potential exposure of their portion of their settlement funds to diminution because of their decision to pursue the appeal.

The same is not true, however, for Carson, Scappatura or any other Non-Settling Limited Partner[3] who did not pursue post-settlement litigation. The SACR provides a quite different result for them. In their case, by failing to pursue post-settlement litigation within thirty days of the entry of the order approving the SACR, they became, by force of the court's approval order, "Settling Parties." That would seem to be enough to authorize the Trustee to submit an order authorizing and directing distributions to them. However, the SACR has conflicting provisions on this point. After stating that their failure to institute litigation within thirty days means that "they shall then be deemed a Settling Party and will be bound by all provisions of the Settlement Agreement . . . [and that] [t]he pro-rata share of the Non-Settling Funds will then be disbursed to such claimant upon court order," the SACR goes on to state that "[n]o Settlement Distribution shall occur until a party executes a document consenting to the terms of this Settlement . . . [and that] [t]he payment of any Settlement Distribution is conditioned upon this obligation."

The Court's view of these provisions at the time the SACR was presented and approved was that the agreement would be self-executing and would bring the administration of this case to closure in an expeditious manner. The first set of provisions accomplishes that goal; the second set of provisions does not. The clear intent of the SACR was to provide both an opportunity for a dissatisfied limited partner to pursue litigation and consequences if he or she did not. The consequence of non-action was to be bound by the terms of the SACR by operation of law. Consistent with these underlying purposes, the Court will interpret the SACR as self-

---

[3]The Trustee identified Nicholas dePetris, a nephew of Anthony dePetris, as an additional Non-Settling Limited Partner. There may be others.

executing and will allow the Trustee to submit an order as to any Non-Settling Party who did not file litigation within the thirty day window; that order will both bind that party to the terms of the agreement, including all releases, and entitle that party to receive a distribution.

Therefore, the Trustee is directed to submit an order authorizing and requiring the distribution of settlement amounts to any Non-Settling Parties who did not institute litigation within thirty days and, upon entry of the order, to make the distributions required by it.

The fund available to pay these fees[4], and any ongoing fees, will consist of the distributions otherwise due to dePetris and Palmer, but not those due to any other Non-Settling Parties. Based on the numbers provided by the Trustee at the hearing, the amount set aside for dePetris and Palmer is $128,680.20.[5]

**C.     Is an award to Osborn premature prior to completion of all appeals?**

The Objectors argue that it is premature to award fees to Osborn from their settlement proceeds until it is demonstrated that Osborn's defense of the appeal has been "successful." The Court disagrees.

The language of Paragraph 5 has two provisions related to possible payment of attorneys fees. The first states that the funds are set aside "to fund the Debtors' participation in any litigation that such parties shall choose to pursue." The second states that "[n]on-Settling Parties need to recognize that if the GP or any other party is successful in defending the claims, such parties shall have a claim to recover attorneys' fees and cost from the Non-Settling Party Funds." The Court interprets the first provision to apply to estate professionals engaged under the Bankruptcy Code and the second provision to apply to professionals representing other parties who may seek attorneys fees under applicable state law.[6] For example. state law provides for

---

[4]The Fee Application of Stegall, Katz & Whitaker, P.C., counsel for the general partner, will be addressed in a separate order of even date.

[5]This consists of the following: dePetris: College Properties, $39,439.56, College Properties II, $60,121.85; Palmer: College Properties, $6573.26, College Properties II, $22,545.56.

[6]As noted, counsel for the GP has filed such an application here.

5

fees to the "prevailing party" in a dispute based upon contract and provides indemnification rights to a general partner in certain circumstances; bankruptcy law governs payment to estate professionals under Section 330 where "success" is not an explicit criterion for a fee award. Therefore, where, as here, an estate professional has applied for compensation under Section 330 and, as the Court has found that an award is appropriate, the fees may be paid without waiting the final outcome of the appeal.

**D.  Should this matter be decided by the Bankruptcy Appellate Panel rather than this Court?**

Objectors' final argument is frivolous. The bankruptcy court always retains jurisdiction over fee awards to professionals employed by the estate. The relevant portions of the Federal Rules of Bankruptcy Procedure[7] that address appeals are silent on the issue of fee awards.

**E.  Is payment in full appropriate today?**

A final point is the propriety of ordering full payment of the fees and costs today. The difficulty is multi-fold. First, the "pot" from which fees are payable is limited to $128,680.20. Second, the Court has today awarded fees to counsel for the general partner in a reduced amount but declined to order payment pending completion of the appeal to the Circuit. Third, counsel for the Montage Parties has suggested that they, too, will file an application for payment under Paragraph 5, presumably upon a final successful determination of the appeal.[8] Fourth, fees are ongoing because of the continued prosecution of the appeal at the Ninth Circuit level. And, finally, as noted at the hearing, this case has been converted to Chapter 7 and Mr. Mullen has been appointed as trustee of that estate. Any administrative expenses incurred in that estate would have priority in distribution over these Chapter 11 administrative expenses.

For the foregoing reasons, the Court concludes that it is prudent to restrict payment to Osborn at this time to 75% of approved fees and 100% of approved costs (payment to be applied

---

[7] Rules 8001 *et seq.*

[8] The Court makes no comment at this time whether any such fees might be awarded but simply notes the comment of counsel at the hearing.

first to amounts remaining in the Fee Reserve and then to the Non-Settling Parties Funds), with the remainder payable upon further court order.

## III. Conclusion

According to the record made at the time of the approval hearing, the SACR provided for a return to the limited partners of an amount approaching their initial capital investment, albeit without any positive return, on the condition that such limited partners agree to its terms. DePetris and Palmer opted not to agree and, with full knowledge of the consequences, instead pursued a course of litigation, triggering the provision that the fees to defend the estate would be paid from the distributions that they would otherwise have received. While it is an unfortunate result, it is both fair today and was wholly avoidable in February of this year.

Counsel for the Trustee is to submit a form of order.

So ordered.

**DATED: November 13, 2007**

CHARLES G. CASE II
UNITED STATES BANKRUPTCY JUDGE

**COPY** of the foregoing mailed by the BNC and/or
sent by auto-generated mail to:

Clifford B. Altfeld
Altfeld Battaile & Goldman
250 N. Meyer Avenue
Tucson, Arizona 85701-1090
Special Counsel to Trustee

Brian J. Mullen
P.O. Box 32247
Phoenix, Arizona 85064
Chapter 11 Trustee

7

| | |
|---|---|
| 1 | James E. Cross |
|   | Brenda K. Martin |
| 2 | Osborn, Maledon, PA |
|   | 2929 N. Central Avenue, 21st Floor |
| 3 | Phoenix, Arizona 85012-2974 |
|   | Attorneys for Brian J. Mullen, Trustee |
| 4 | |
|   | Charles T. Stegall |
| 5 | Loren I. Thorson |
|   | Stegall, Katz & Whitaker, PC |
| 6 | 531 E. Thomas Road, suite 102 |
|   | Phoenix, Arizona 85012-3239 |
| 7 | Attorneys for Tom D'Ambrosio |
| 8 | Charles J. Kelhoffer |
|   | Tamlyn E. Lewis |
| 9 | Geoffrey M. Khotim |
|   | Ridenour, Heinton, Kelhoffer, Lewis & Garth, PLLC |
| 10 | 201 N. Central Avenue, Suite 3300 |
|   | Phoenix, Arizona 85004 |
| 11 | Attorneys for Montage Industries, Inc., |
|   | Black Mountain Homes, LLC and |
| 12 | Casa del Oro Development, LLC |
| 13 | Randy Nussbaum |
|   | Kevin J. Rattay |
| 14 | Jaburg & Wilk, PC |
|   | 3200 N. Central Avenue, Suite 2000 |
| 15 | Phoenix, Arizona 85012-2440 |
|   | Attorneys for Montage Industries, Inc., |
| 16 | Black Mountain Homes, LLC and |
|   | Casa del Oro Development, LLC |
| 17 | |
|   | Joseph T. Stewart |
| 18 | Law Office of Joseph T. Stewart |
|   | 1100 E. Washington Street, Suite 200 |
| 19 | Phoenix, Arizona 85034-1090 |
|   | Attorneys for Anthony DePetris and Patricia Palmer |
| 20 | |
| 21 | |
|   | Richard Cuellar |
| 22 | Office of the U.S. Trustee |
|   | 230 N. First Avenue, Suite 204 |
| 23 | Phoenix, Arizona 85003 |
| 24 | Jerry L. Carlson |
|   | 14582 W. Zuni Trail |
| 25 | Surprise, Arizona 85374 |
| 26 | E.C. Scappatura, M.D. |
|   | No address provided |
| 27 | |
| 28 | |

1 _____

9